IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| MARK DAVIS, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | 5:14-cv-000272-CAR-CHW |
| | : | |
| GLEN JOHNSON, | : | Proceedings Under 28 U.S.C. § 2254 |
| | : | Before the U.S. Magistrate Judge |
| Respondent. | : | |
| | : | |

### REPORT AND RECOMMENDATION

Before the Court is Petitioner Mark Davis' petition for federal habeas corpus relief filed pursuant to 28 U.S.C. § 2254. Doc. 1. Because Petitioner is not entitled to habeas relief, it is **RECOMMENDED** that his petition be **DENIED**.

### PROCEDURAL BACKGROUND

On July 24, 2009, a Bibb County jury returned a verdict on count two of a two count indictment, finding Petitioner guilty of felony murder in the stabbing death of Roy Robinson. Doc. 20-2, pp. 17-18. Petitioner was aquitted on count one, malice murder. The Court sentenced Petitioner to life in prison. *Id.*

Petitioner filed a motion for new trial which was heard on November 4, 2010. Doc. 20-15, p. 6. The motion for new trial was denied and Petitioner appealed to the Supreme Court of Georgia alleging the following errors: (1) the trial court erred by failing to grant Petitioner's motion for directed verdict; (2) trial counsel rendered ineffective assistance of counsel for failing to call an expert witness and for introducing Petitioner's taped police interview; and (3) after a juror fainted and had to be excused, the trial court erred by failing to poll the jury or provide a limiting instruction. Doc. 20-17, p. 14. The Supreme Court of Georgia did not agree and entered

1

an order affirming Petitioner's conviction on February 27, 2012. *Davis v. State*, 290 Ga. 584 (2012).

Petitioner filed his state habeas petition on August 20, 2012, alleging at least twenty-four grounds of error. Doc. 19-1; Doc. 19-2; Doc. 19-3; Doc. 19-4; Doc. 19-5; Doc. 19-6; Doc. 19-7; Doc. 19-8; Doc. 19-9; Doc. 19-10; Doc. 19-11; Doc. 19-12; Doc. 19-13; Doc. 19-14; Doc. 19-15; Doc. 19-16; Doc. 19-17; Doc. 19-18; Doc. 19-20; Doc. 19-21; Doc. 19-23; Doc. 19.[1]

A final order denying all twenty-four grounds of relief sought by petitioner was issued on October 19, 2013. Doc. 19-24. On June 16, 2014, the Georgia Supreme Court dismissed Petitioner's request for a certificate of probable cause to appeal as being untimely and denied his motion for reconsideration on July 28, 2014. Doc. 19-25; Doc. 19-26. Petitioner filed the instant federal habeas action on July 21, 2014, presently alleging twenty-nine grounds of relief with nineteen amendments. Doc. 1; Doc. 4; Doc. 6; Doc. 8; Doc. 9; Doc. 10; Doc. 11; Doc. 12. On September 9, 2014, this Court entered an order granting Petitioner's first seven motions to amend and disallowing any further amendments. Doc. 13. Petitioner filed at least twenty more motions to amend, proposed orders, briefs, and notices.[2]

## FACTUAL BACKGROUND

The evidence presented at trial was largely uncontested. It was uncontested that Petitioner stabbed the victim, Roy Robinson, multiple times and that Robinson died as a result of his wounds. It was uncontested that the stabbing occurred in the context of a fight between Petitioner and Robinson. What was in dispute was the nature of the fight between Petitioner and Robinson. Petitioner relied on a theory of self-defense, contending that he stabbed Robinson because Robinson was threatening him with a broken glass.

---

[1] Petitioner submitted atleast twenty-two motions to amend and supplements to his state habeas petition.
[2] Pursuant to that order, only petitioner's original petition and first seven amendments are considered in this recommendation. The motions to amend are generally redundant.

2

The Supreme Court of Georgia succinctly summarized the evidence presented at the trial in its decision on Petitioner's appeal:

> The record shows that on Thanksgiving day 2008, appellant, Robinson, Terry Shawn Luke, and Priscilla Lowe were having dinner at Lowe's apartment. Throughout the day, appellant, Robinson, and Lowe had been drinking beer and, after dinner, they began drinking liquor provided by Robinson. Appellant and Robinson, who were both intoxicated, started roughhousing with each other. The fight became more serious when appellant pushed Robinson and Robinson struck appellant in the back of the head with a drinking glass which shattered on impact, cutting appellant's neck. Luke testified that appellant pulled out a knife from his pocket after being hit with the glass. Luke and Lowe testified that Robinson came forward with a couch cushion, verbally threatening appellant. Appellant chased Robinson with the knife and stabbed Robinson to death in the hallway of the apartment. Neither Luke nor Lowe witnessed the stabbing because Luke had retreated to the bathroom and Lowe had retreated to the kitchen to avoid the melee. Lowe testified that she heard "bodies hitting walls" while she was in the kitchen. After the fight was over, Lowe saw appellant leave the house with a knife in his hand. She also saw the victim lying on the floor in the hallway, asking her to call 911. Robinson died at the scene from his injuries which included "sharp-force wounds" to his heart, lung, diaphragm and liver. No form of a weapon was found on Robinson's body.
>
> Appellant was arrested that same night and identified by Luke and Lowe as the perpetrator. Appellant told the police where to look for the knife, and the police recovered it. At trial, appellant testified that he acted in self-defense. According to appellant, after Robinson had hit him in the head with the drinking glass, Robinson "slung" at him with a shard of broken glass trying to cut him at least twice. Appellant testified that he protected himself with the knife by stabbing Robinson.

3

*Davis*, 290 Ga. at 584-85. In accordance with 28 U.S.C. § 2254(e)(1), and for purposes of considering this petition, the facts as found by the Georgia Supreme Court on direct appeal of Petitioner's convictions are adopted by the Court.

## NEED FOR AN EVIDENTIARY HEARING

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244, factual determinations made by a state court are presumed to be correct but can be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). On the other hand, if an applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for a constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2). After a careful review of the record, and in light of the statement of facts presented herein, no evidentiary hearing is warranted in this case.

## LEGAL STANDARDS

In accordance with the provisions of AEDPA, federal courts are prohibited from granting habeas relief with respect to any claim adjudicated on the merits in state court unless that decision either: (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d); *Wellons v. Warden, Ga. Diagnostic and Classification*

*Prison*, 695 F.3d 1202, 1206 (11th Cir. 2012). Not only is this standard "difficult to meet," *Harrington v. Richter*, 562 U.S. 86, 102 (2011), but it also is a "highly deferential standard for evaluating state-court rulings . . . which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

A state court's decision is "contrary to" clearly established federal law if either "(1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). An "unreasonable application" of clearly established federal law may occur if the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case." *Id*. "An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Id*.

When a "state court's application of federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). Similarly, when reviewing a state court's decision applying federal law, a federal court must not determine the accuracy of the result, but instead, whether the result was objectively unreasonable, which is "a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## PROCEDURAL DEFAULT

Pursuant to O.C.G.A. § 9-14-51, "all grounds for relief claimed by a petitioner for writ of habeas corpus shall be raised by a petitioner in his original or amended petition" unless a judge

finds grounds on a second petition which could not have been reasonably raised in the original or amended first petition. Pursuant to 28 U.S.C. § 2254, applications for a writ of federal habeas corpus shall not be granted unless "the applicant has exhausted the remedies available in the courts of the state." When a claim is both unexhausted in state court and procedurally barred in state court, the barred claim is treated as no basis for federal habeas relief. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). With regard to the interaction of O.C.G.A. § 9-4-51 and Section 2254, the state bar "can and should be enforced in federal habeas proceedings against claims never presented in state court." *Chambers v. Thompson*, 150 F.3d 1324, 1327 (11th Cir. 1998).

In the instant action, Petitioner has already filed a petition for writ of habeas corpus in state court. Pursuant to O.C.G.A. § 9-14-51, Petitioner is barred from raising any new grounds for relief in a second state habeas petition.[3] Therefore, any grounds for relief that Petitioner failed to raise on direct appeal or in his original state habeas petition have been procedurally defaulted. Respondent argues that the following grounds are procedurally defaulted for that reason: ground two, ground twelve, ground twenty-six, ground twenty-nine, supplemental ground two, supplemental ground four, supplemental ground nine, second supplemental ground three, second supplemental ground four, second supplemental ground five, second supplemental ground six, second supplemental ground eight, and third supplemental ground one. After careful review of the issues raised by Petitioner on his direct appeal and state habeas petition, the Court finds that the following grounds in Petitioner's federal habeas petition have not previously been raised: ground twenty-nine, supplemental ground two, supplemental ground four, and supplemental ground ten. They are, therefore, procedurally barred.

---

[3] Such new claims are barred unless any judge to whom the petition is assigned finds grounds for relief which could not reasonably have been raised in the original or amended petition. O.C.G.A. § 9-14-51.

Respondent further argues that since Petitioner's request for a certificate of probable cause to appeal was untimely, numerous other grounds are unexhausted and procedurally barred by O.C.G.A. § 19-14-51. Specifically, respondent argues the following grounds are unexhausted and procedurally barred: second amended ground two, ground three, amended ground four, amended ground five, ground six, amended ground six, ground seven, ground eight, amended ground eight, ground ten, ground eleven, ground thirteen, ground eighteen, ground nineteen, ground twenty, ground twenty-one, ground twenty-two, ground twenty-three, ground twenty-four, ground twenty-five, and ground twenty-eight.

Petitioner's state habeas action was denied on October 19, 2013, and he was advised in the final order that he had thirty days to file an application for certificate of probable cause if he wished to appeal. Doc. 19-24, p. 14. Petitioner failed to file a timely certificate of probable cause.[4] Following the denial of a state habeas petition, Georgia law provides for discretionary review by the Georgia Supreme Court. Until a petitioner has filed a request for certificate of probable cause to the Supreme Court of Georgia, his state court remedies are unexhausted. If the petition for certificate of probable cause is untimely, then the claims therein are procedurally barred for federal habeas review. *Pope v. Rich*, 358 F.3d 852 (11th Cir. 2004). Therefore, Petitioner's failure to file for a certificate of probable cause to appeal in the time allowed means that all claims which were not otherwise considered on Petitioner's direct appeal are procedurally barred. Respondent is correct that the following grounds were not addressed on Petitioner's direct appeal and are procedurally defaulted: second amended ground two, ground

---

[4] The date Petitioner filed his request for certificate of probable cause cannot be determined from the record, but both parties state that it was untimely, and it was found to be untimely by the Supreme Court of Georgia. Petitioner's amended ground one states that he was not served with the final order until the limitations period had run. Doc. 8, p. 2.

three,[5] amended ground five, ground six, amended ground six, ground seven, ground eight, amended ground eight, ground ten, ground eleven, ground thirteen, ground eighteen, ground nineteen, ground twenty, ground twenty-one, ground twenty-two, ground twenty-three, ground twenty-four, and ground twenty eight. The following other grounds are also procedurally defaulted: second amended ground one, third amended ground one: second amended ground one, third amended ground one, second amended ground three, ground four, second amended ground four, ground five, second amended ground five, second amended ground six, amended ground eight, second amended ground eight, and ground twelve.

Thus, these claims are barred from federal habeas review unless petitioner can demonstrate both cause and prejudice for his failure to properly raise the claim. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991). To establish cause, petitioner must show "that some objective factor external to the defense impeded" his ability to comply with the State's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, petitioner must show "actual prejudice" which requires "at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (2003). Petitioner argues that the cause for his failure to timely file for a certificate of probable cause to appeal, which is the reason for his procedural default, is that the state habeas court failed to notify him about or provide him with a copy of the final order. Doc. 8, p. 2. Petitioner is correct that failure of the state habeas court to notify petitioner of its final order denying his petition can constitute cause. See *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007).

---

[5] In ground three, Petitioner argues ineffective assistance of trial counsel for failure to poll the jury after a juror fainted. Doc 1. P. 8. Petitioner argued in his direct appeal that the court committed error for failing to poll the jury or otherwise issue corrective instructions.

However, the burden to establish cause is on the Petitioner,[6] and Petitioner has failed to present any evidence to establish cause for his default. His claim is a mere conclusory assertion and lacks evidentiary support. Therefore, the above claims are procedurally defaulted.

Petitioner's remaining grounds can be grouped into three basic underlying claims.[7] They are: (1) The trial court erred in denying Petitioner's motion for directed verdict; (2) Petitioner's trial counsel was ineffective for failing to call an expert witness; (3) and the trial court erred by failing to poll the jury.

## INEFFECTIVE ASSISTANCE OF COUNSEL: GROUND FIVE

In order to succeed on a claim of ineffective assistance of counsel, the petitioner must demonstrate both that counsel's performance was deficient and that he was prejudiced by this deficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1175-76 (11th Cir. 2001). These are the two prongs of an ineffective assistance of counsel claim as determined by the United States Supreme Court. *Strickland v. Washington*, 466 U.S. 668 (1984). The first prong, deficient performance, is found only when the petitioner can show that the errors made were serious enough that counsel could not be considered to be "functioning as the 'counsel' guaranteed [ ] by the Sixth Amendment." *Id*. at 1176. Counsel's performance is considered "through a deferential review of all the circumstances from the perspective of counsel at the time of the alleged error." *Baldwin v. Johnson*, 152 F.3d 1304, 1311 (11th Cir. 1998). Accordingly, every effort must be made to limit the "distorting effects" hindsight may have on evaluating an attorney's performance when determining if that performance fell within "*Strickland's* wide range of

---

[6] In *Hartman*, Petitioner established that the court docket sent a copy of the order only to him, and he received no prison-mail during the relevant period. 492 F.3d at 358.
[7] These claims were presented to the Georgia Supreme Court on direct appeal. "To exhaust state remedies, the petitioner must present fairly every issue[] raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Reedman v. Thomas,* 305 F. App'x. 544 (11th Cir. 2008) (unreported); see also, *Horowitz v. Wainwright*, 709 F.2d 1403 (11th Cir. 1983)

reasonable professional conduct." *Mills v. Singletary*, 161 F.3d 1273, 1286 (11th Cir. 1998). This wide range of reasonable professional conduct does not test if counsel could have done more or if a better attorney would have done more because *Strickland* is an objective standard and does not require perfection. *Waters v. Thomas*, 46 F.3d 1506, 1513 (11th Cir. 1995).

On the second prong of *Strickland*, the petitioner bears the burden of showing that a reasonable probability exists that but-for counsel's errors the result would have been different. *Strickland*, 466 U.S. at 694. It is not enough that a habeas petitioner prove that the error had some conceivable effect on the outcome of the proceeding; instead, the probability of a different result must be sufficient to undermine confidence in the outcome of the proceeding by proof of errors that the proceeding was rendered unfair. *Johnson*, 256 F.3d at 1177. If the prejudice prong cannot be established, courts may decline to address the sufficiency of counsel's performance. *Waters*, 46 F.3d at 1510.

Judicial scrutiny under *Strickland* is highly deferential and surmounting it "is never an easy task". *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Establishing a *Strickland* claim through a Section 2254 habeas claim is "all the more difficult" because the highly deferential standards of both *Strickland* and Section 2254 work in "tandem." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). To be successful, a petitioner must not merely prove unreasonableness under *Strickland* but must overcome "any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. As such, "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Petitioner contends, as he did on direct appeal and in his state habeas application, that his trial counsel was ineffective for failing to call an expert witness during his trial. Specifically,

Petitioner argues that his trial counsel should have called an expert witness to refute the medical evidence presented by the state's medical examiner regarding the victim's injuries. Doc. 1, p. 16. Petitioner argues that he was prejudiced by this failure because during his motion for new trial Dr. Salvatore Dellacona, an "expert physician in emergency and wound," testified that the wounds in the victim's hand were the result of the victim holding a piece of glass rather than defensive in nature. Doc. 1, p. 16. Since Petitioner relied on a theory of self-defense, he believes that it was ineffective assistance of counsel for his trial counsel to fail to call an expert who could have corroborated petitioner's testimony. *Id*.

    i.    *The Evidence*

The evidence at trial was primarily eyewitness testimony. Two witnesses, Priscilla Lowe and Terry Shawn Luke, testified about the fight between Roy Robinson and Petitioner on Thanksgiving day. Lowe testified that some initial "horseplay" escalated when Petitioner and Robinson "hit the floor" and "went into the corner between the couches." Doc. 20-3, p. 30. Luke testified that the two were pushing each other and "playing around," but that it "started getting serious" when Petitioner and Robinson "tussled and fell over the arm of the couch between the couch and the love seat." Doc. 20-4, p. 38. Luke testified that Petitioner pushed Robinson down two more times as Robinson was attempting to stand up. Doc. 20-4, p. 39. After Petitioner pushed Robinson the second time, Robinson picked up a glass and hit Petitioner on the back of his neck, shattering it and cutting Petitioner. Doc. 20-3, pp. 32-33; Doc. 20-4, p. 39.

Luke testified that he then saw Petitioner pull a knife from his pocket. Doc. 20-4, pp. 40-41. When he saw the knife, Luke fled to the bathroom at the opposite end of the hallway from the living room. Doc. 20-4, p. 40. As he was leaving the living room, Luke saw that Robinson had "picked up a cushion to block the knife." Doc. 20-4, p. 42. Robinson had his back to the

hallway. *Id*. Lowe did not see Davis pull the knife, but saw Robinson take a cushion off the couch and approach Petitioner saying, "Hit me, … cause I ain't like Priscilla. Hit me, I'm going to fuck you up." Doc. 20-3, p. 34. Lowe, who was in a wheelchair, backed into the kitchen as Robinson was picking up the cushion and approaching Petitioner. *Id*. As she headed into the kitchen, Petitioner and Robinson were "tussling" and "started going down the hall." Doc. 20-3, p. 36. Luke and Lowe both saw Robinson pick up a cushion and neither witnessed Robinson holding or threatening Petitioner with any pieces of the broken glass.

Because both were hiding, neither Luke nor Lowe witnessed the stabbing. From his hiding place in the bathroom, however, Luke heard footsteps coming down the hallway and "scuffling" outside the door. He then heard groans and Robinson shouting for Lowe to call an ambulance. Doc. 20-4, pp. 43-44. Lowe heard "a bunch of commotion" as Petitioner and Robinson went down the hall, she then heard Petitioner say, "I told you not to fuck with me." Doc. 20-3, p. 40. When the commotion stopped, she "peeped around the corner" and heard Robinson asking her to call 911. *Id*. Robinson was lying outside the bathroom door, and Luke had to push his body out of the way to open the door. Doc. 20-4, p. 45.

Petitioner testified at trial and presented a substantially different version of the events. Petitioner testified that Robinson started pushing him while he was trying to talk to a friend on the telephone. Doc. 20-7, p. 52. When Petitioner tried to walk down the hallway to continue talking, Robinson hit him in the back of the head with a glass and cut his throat. Doc. 20-7, p. 52; Doc. 20-8, p. 1. Petitioner testified that Robinson "slung the glass" again and cut him a second time. As Petitioner stated, "that's when I pulled out my knife, and he kept coming at me, so I stabbed him." Doc. 20-8, p. 1. Petitioner testified that he stabbed Robinson in the living room and that Robinson then ran down the hallway. Doc. 20-8, p. 2.

12

During trial the State called Dr. Melissa Ann Sims, the Central Regional Medical Examiner, as an expert in forensic pathology. Doc. 20-5, pp. 42-44. Dr. Sims testified that she performed an autopsy on Roy Robinson and was able to determine that he suffered "five sharp-force" wounds on his torso. *Id.* at 48. One of those wounds penetrated into Roy Robinson's lung and heart, which was identified as the cause of death. Doc. 20-7, pp. 7-8. Dr. Sims further testified that there is a difference between defensive wounds and aggressive wounds, and that Robinson had several defensive wounds on his hands, arms, and legs. Doc. 20-7, pp. 1-6. Dr. Sims testified during cross-examination that Robinson was intoxicated at the time of his death. Doc. 20-7, p. 11. Defense counsel did not ask Dr. Sims if the wounds to Robinson's hands and legs were consistent with offensive wounds. Doc. 20-15, p. 36.

At trial the defense called Dr. Ronnie Hendricks, an emergency physician, as an expert in emergency medicine. Doc. 20-7, p. 40. Dr. Hendricks testified that he treated Petitioner for multiple cuts on his neck, at least two of which required stitching. *Id.* at 41. Dr. Hendricks described the injuries as "one somewhat deep wound" three centimeters long and one "more superficial wound" one centimeter long. *Id.* at 42, 45. Defense counsel did not ask Dr. Hendricks if the wounds on Robinson's hands and legs were consistent with offensive wounds. Doc. 20-15, p. 36.

At Petitioner's motion for new trial, his new counsel presented a third expert witness to testify about the wounds suffered in this case. Dr. Salvatore Dellacona was qualified as an expert in emergency wound care medicine. Doc. 20-15, p. 13. Based on his review of photographs from Petitioner's emergency room visit, Dr. Dellacona testified that the wounds on Robinson's hands could have been either defensive or offensive, but observed that the "serpentine" wound on Robinson's right palm was more likely a glass cut than a knife cut. *Id.* at 14-18. Dr. Dellacona

13

testified that the cuts on Petitoner's neck were likely caused by broken glass, but conceded that the cuts could have been caused by a glass shattering on impact. *Id.* at 24, 27-30. Dr. Dellacona also conceded that the cut to Robinson's hand could have been caused when the glass shattered. *Id*. at 24.

    *ii.*    *Analysis*

In its consideration of Petitioner's ineffective assistance of counsel claims on direct appeal, the Supreme Court of Georgia found that Petitioner had failed to show that his trial counsel's failure to call a second expert was outside the "broad range of professional conduct afforded trial attorneys." *Davis*, 290 Ga. at 586. This finding was consistent with clearly established federal law as determined by the United States Suprme Court in *Strickland* and was based on a reasonable factual determination.

Trial counsel's decision not to call a second medical expert was a reasonable strategic decision. As the Supreme Court observed, both Dr. Dellacona and Dr. Hendricks were "equivocal" about the nature of Robinson's hand wound and Petitioner's neck wounds. *Davis*, 290 Ga. at 586. Because both doctors indicated that the wounds could have been consistent with either Petitioner's version of events or with the testimony of Luke and Lowe, calling a second medical expert would have added little to Petitioner's defense. Petitioner was able to present his theory to the jury and his counsel competently argued during closing that the wounds to Petitioner's neck and Robinson's hand indicated that Robinson had continued to assault Petitioner with the broken glass. Doc. 20-9, p. 8. In the end, the jury's decision was based primarily on the testimony and credibility of the witnesses. Petitioner's counsel was not deficient in failing to call a second expert, and Petitioner cannot show that he was prejudiced by this

decision. Therefore, with respect to defense counsel failing to call an expert witness, it is **RECOMMENDED** that his ineffective assistance of counsel claim be **DENIED.**

Petitioner also argues that defense counsel was ineffective for playing Petitioner's taped police interview for the jury. Specifically, Petitioner argues that this inappropriately opened the door to Petitioner being cross-examined about the tape and petitioner was never advised of this possibility. However, defense counsel offered strategic reasons for his decision to introduce the video tape of the interview. He testified that the video presented Petitioner in a positive light while simultaneously presenting the law enforcement officers in a negative light. Doc. 20-15, p. 42. Petitioner argues that presenting the tape was harmful, but defense counsel testified that the harm was largely due to Petitioner's demeanor while on the stand and that it was Petitioner's decision to testify. Doc. 20-15, p. 38. The Georgia Supreme Court applied the relevant federal law to the facts and came to a reasonable conclusion. Therefore, with respect to defense counsel playing petitioner's taped statement, it is **RECOMMENDED** that Petitioner's ineffective assistance of counsel claim be **DENIED.**

## SUFFICIENCY OF THE EVIDENCE
## GROUND NINE, FOURTEEN, FIFTEEN, SIXTEEN, AND SEVENTEEN

It is the "responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 132 S. Ct. 2, 3 (2011) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* When a federal habeas court is reviewing a state court's decision as to the sufficiency of the evidence, it may only overturn if that decision was "objectively unreasonable." *Id.* The only question for the state court, under *Jackson*, was whether the evidence "was so insupportable as to fall below the threshold of bare rationality," and the state court's determination that it is not is

entitled to considerable deference. *Preston v. Secretary*, *Florida Dept. of Corrections*, 785 F.3d 449, 462 (11th Cir. 2015) (quoting *Coleman v. Johnson*, 132 S.Ct. 2060 (2012)).

Review of the record, with due deference to the jury and to state courts, indicates that the evidence introduced at trial was sufficient to support the verdict. It was undisputed that Petitioner stabbed Robinson multiple times. Although it was also undisputed that Robinson struck Petitioner on the neck with a glass, the two eyewitnesses testified that Petitioner was the original aggressor in the fight and neither witness testified that Robinson had continued to assault Petitioner with the glass after it shattered. The witnesses testified that Petitioner attacked Robinson with a knife when Robinson was armed only with a sofa cushion. In light of this evidence, the Supreme Court of Georgia reasonably determined that a rational trier of fact was authorized to find Petitioner guilty beyond a reasonable doubt of felony murder. Therefore, it is **RECOMMENDED** that grounds nine, fourteen, fifteen, sixteen, and seventeen be **DENIED** on the merits.

## DIRECTED VERDICT
## GROUND ONE AND SECOND AMENDED GROUND SEVEN

Petitioner's ground one and second amended ground seven allege that it was error for the trial judge to deny Petitioner's motion for directed verdict. Petitioner claims that the trial judge denied a directed verdict based on "false statements" made by the district attorney, and argues that "there was no evidence . . . that [Petitioner] chased Roy Robinson down a hallway stabbing him to death." Doc. 10, p. 7. As explained above, there was in fact ample evidence that Petitioner chased Robinson down the hallway, and the evidence was sufficient to support a guilty verdict. Accordingly, the Supreme Court of Georgia reasonably held that the trial court did not err in denying the motion for directed verdict, and it is **RECOMMENDED** that Petitioner's claims in ground one and second amended ground seven be **DENIED** on the merits.

### FAILURE TO STATE A CLAIM:
### AMENDED GROUND ONE, AMENDED GROUND THREE, AMENDED GROUND SEVEN, AND AMENDED GROUND TEN

In amended ground one, Petitioner alleges that he was denied review because the habeas court failed to serve him with a copy of its final order. Doc. 8, p. 2. In amended ground three, petitioner alleges that he was denied a fair hearing by the state habeas court. Doc. 8, p. 4. Amended ground seven alleges that the Georgia Supreme Court did not properly find facts. Doc. 8, p. 8. Amended ground ten asks this Court to "launch a federal investigation" into the state courts. Doc. 9. P. 3.

Second amended ground one, ground seven, and amended ground ten fail to state a ground upon which relief may be granted because they fail to allege a violation of clearly established federal law. Amended ground one and amended ground three allege error in the state habeas proceedings and are not cognizable in a federal habeas proceedings. See *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004). Therefore, it is **RECOMMENDED** that they be **DENIED**.

### CONCLUSION

After a careful review of the record, it is **RECOMMENDED** that Petitioner's petition for writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 11th day of September, 2015.

s/ Charles H. Weigle_____
Charles H. Weigle
United States Magistrate Judge